IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Symbolstix, LLC,                                                                   Case No. 3:14CV1850

        Plaintiff,

        v.                                                                                **ORDER**

Smarty Ears, LLC, et al.,

        Defendants.

        This is a copyright infringement case between two publishers of pictogram stick-figure symbols that speech therapists use in their work with speech-impaired children.

        Plaintiff Symbolstix, LLC (Symbolstix) is an Ohio limited liability company. (Doc. 1 ¶ 1). Defendants are Smarty Ears, LLC (Smarty Ears), a Texas limited liability company, and its Manager and Director, Barbara Fernandes, a resident of Texas. (*Id.* ¶¶ 1-3).

        Pending is defendants' motion to dismiss for want of personal jurisdiction or, alternatively, to transfer venue. (Doc. 44). For the reasons that follow, I grant the motion to dismiss for want of personal jurisdiction as to Fernandes, but deny it as to Smarty Ears. I also deny defendants' motion to transfer venue.

**Background**

        Symbolstix is the developer and owner of a collection of thousands of two-dimensional pictorial images and symbols (the "Library") used for communication in special education instruction and speech pathology treatment. (Doc. 1 ¶ 8). According to Symbolstix, "[t]he images are particularly useful for communicating with special needs children who have difficulty

1

understanding written words but who can understand a pictorial image which stands for or represents a written word." (*Id.*).

Symbolstix is the exclusive copyright owner of the Library under United States law. (*Id.* ¶¶ 9-11). Among the exclusive rights Symbolstix owns are the rights to reproduce the Library, to create works derivative of the Library, and to distribute the Library to the public. (*Id.* ¶ 12).

Smarty Ears sells educational mobile device applications ("apps"), which, as do the Symbolstix materials, use stick symbol pictograms to improve speech and language skills. (*Id.* ¶ 16; Doc. 44-1 ¶ 3). According to defendants, parents, teachers and speech therapists "worldwide" use the apps to help children with speech and developmental impairments. (Doc. 44-1 ¶ 3). Smarty Ears sells its products exclusively through Apple's iTunes App Store (the "App Store").[1] (*Id.* at 3).

In May 2011, Fernandes, on behalf of Smarty Ears, purchased a one-year limited online subscription to the Library. (Doc. 1 ¶ 14). The license restricted use of the Library to noncommercial communication purposes. (*Id.*). Once the license expired, Fernandes' right to use or reproduce the Library terminated. (*Id.* ¶ 15).

Symbolstix alleges defendants nonetheless converted the Library's images for use in their own product, a comprehensive symbol set called "Smarty Symbols." (Doc. 45 at 1; Doc. 1 ¶¶ 18-20). Defendants used Smarty Symbols to create apps. (Doc. 45 at 7). Ohio residents (in addition to residents of every other state) could, and did, purchase Smarty Ears apps through the App Store.[2] (*Id.* at 8).

---

[1] Smarty Ears promotes its products on its own website, www.smartyearsapps.com. It does not, however, sell its products on its website. Instead, the website links to the App Store.

[2] Symbolstix estimates sales to Ohio residents accounted for about 2.5-3% of Smarty Ears' total sales revenue. (Doc. 45 at 8).

According to Symbolstix, defendants began specifically to target the Ohio market shortly after obtaining its license from plaintiff. (*Id.* at at 1). In 2012, Smarty Ears approached Jenna Rayburn, a speech pathologist in Columbus, Ohio, to ask that she review Smarty Ears apps on her nationally-popular speech therapy blog. (*Id.*). Rayburn agreed, and periodically over the next three years wrote favorable reviews of numerous Smarty Ears apps.[3] (*Id.* at 2-6). Smarty Ears did not pay Rayburn for her reviews; instead, it gave her free copies of Smarty Ears apps to use with her students. (*Id.* at 6). Occasionally, Smarty Ears also provided Rayburn with free apps to raffle off to speech therapists who visited her blog, including speech therapists in Ohio. (Doc. 48-2 at 46:2-47:11, 26:2-27:5).

Smarty Ears also licensed Smarty Symbols to Rayburn so she could create her own speech and language therapy apps. (Doc. 45 at 3-5). Smarty Ears did so because "[w]e are hoping that by allowing you to use the symbols, it will raise awareness of our symbol set."[4] (Doc. 45 at 3). Smarty Ears hoped such increased awareness would convince more app developers to obtain licenses from Smarty Symbols. (*Id.*).

Finally, Smarty Ears appointed Julie Vogt, another Columbus-based speech therapist, to its "Advisory Board." (*Id.* at 6-7). As a board member, she received free copies of Smarty Ears apps and provided Smarty Ears with feedback for improving them. (*Id.*). Like Rayburn, she used the apps Smarty Ears gave her with her students. (*Id.*).

Symbolstix brought this action in August 2014. (Doc. 1). Its primary allegations regarding personal jurisdiction state Smarty Ears "regularly transacts business in the State of

---

[3] Sometimes, Smarty Ears requested Rayburn's reviews. Other times, Rayburn herself suggested she review Smarty Ears apps. (Doc. 45 at 2-6).

[4] The License Agreement required Rayburn to identify any symbols from Smarty Symbols she used as belonging to Smarty Ears. (Doc. 45 at 5).

3

Ohio," and Fernandes, as "founder and controlling member" of Smarty Ears, "supervised and participated in the unlawful conduct" alleged in the complaint. (Doc. 1 ¶¶ 2-3).

Defendants promptly filed a motion to dismiss for want of personal jurisdiction (Doc. 9), which I ordered them to withdraw so Symbolstix could conduct jurisdictional discovery. (Doc. 22). On completion of that discovery, defendants filed the instant motion. (Doc. 49).

In support of their motion, defendants assert, *inter alia*: 1) Smarty Ears sells its products exclusively through the App Store, a third-party, worldwide distributor; 2) Smarty Ears' limited sales to Ohio residents were random and fortuitous; 3) Smarty Ears does not request the App Store to sell its products specifically in Ohio, nor does the App Store give Smarty Ears the option not to sell its apps in Ohio; 4) Smarty Ears does not specifically target Ohio on its website; 5) Smarty Ears provided Rayburn and Vogt with apps free of charge, just as it does for hundreds of other speech therapists, bloggers and news sources around the world; 6) Fernandes acted strictly in her fiduciary and representative capacity on behalf of Smarty Ears, and never on her own behalf, with respect to Symbolstix's allegations against her; and 7) Fernandes has never visited Ohio. (Doc. 44).

## Standard of Review

"The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The court decides jurisdictional disputes before proceeding to trial, *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980), relying on one of three procedural alternatives to make this determination. *Theunissen*, 935 F.2d at 1458. It may: 1) "decide the motion upon the affidavits alone"; 2) "permit discovery in aid of deciding the motion"; or 3) "conduct an evidentiary hearing to resolve any apparent factual questions." *Id.*

4

Plaintiff's burden varies based on the court's chosen method. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996); *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). If the court elects to rule without an evidentiary hearing, as I do here, plaintiff need only present a *prima facie* case for jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003); *Kerry Steel v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997); *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 792 (6th Cir. 1996).

As with other Rule 12(b) motions, I construe the pleadings and affidavits in the light most favorable to plaintiff, as long as plaintiff sets forth specific facts. *Serras*, 875 F.2d at 1214 (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir.1974)); *see also Nationwide*, 91 F.3d at 792.

## Discussion

Defendants argue Symbolstix fails to establish there are sufficient contacts with the State of Ohio to confer personal jurisdiction over either Smarty Ears or Fernandes. (Doc. 49 at 3). Defendants argue in the alternative that the Northern District of Ohio is not the proper venue for this action.

### I. Personal Jurisdiction

"In determining whether personal jurisdiction exists over a nonresident defendant in a diversity case, a district court applies the law of the state in which it sits subject to due process limitations." *Welsh*, 631 F.2d at 439. In Ohio, personal jurisdiction exists only if the asserted jurisdiction: 1) comports with the state's long-arm statute; and 2) does not violate the due process requirements of the United States Constitution. *Serras*, 875 F.2d at 1214.

5

**A. The Ohio Long–Arm Statute**

Symbolstix asserts jurisdiction under four provisions of Ohio's long-arm statute:

>1) Defendants are "transacting business" in Ohio for the purposes of O.R.C. § 2307.382(A)(1);
>
>2) Defendants have committed multiple torts in Ohio by acts of, *inter alia*, copyright infringement for the purposes of O.R.C. § 2307.382(A)(3);
>
>3) Defendants have caused tortious injury in this state, regularly engaged in a persistent course of conduct and derived substantial revenue from goods consumed in Ohio for purposes of O.R.C. § 2307.382(A)(4); and
>
>4) Defendants have caused injury to Symbolstix by acts taken outside Ohio with the purpose of injuring it for the purposes of O.R.C. § 2307.382(A)(6).

**1. Fernandes**

Symbolstix has not established personal jurisdiction over Fernandes. She testified:

>I have no relatives residing in Ohio. I have never traveled to or visited Ohio for any reason. I own no assets in Ohio. I have never paid taxes in Ohio. I do not own, rent, lease or control any real or personal property in Ohio. I have never had any bank accounts in Ohio. I have never hired any employees or contractors in Ohio, nor have I hired any contractors or employees to perform any contract or obligation in Ohio. I have never maintained an office, mailing address or telephone number in Ohio. I have never operated or conducted any business in Ohio

(Doc. 44-3 ¶ 4).

Based on these facts, I find no basis under Ohio's long-arm statute for personal jurisdiction over Fernandes for any action she took in her personal capacity.

Moreover, it is well-settled under the "fiduciary shield" doctrine that, absent evidence of fraud, "corporate employees performing acts in their corporate capacity are not subject to the personal jurisdiction of a court for such acts." *Heritage Funding & Leasing Co. v. Phee*, 120 Ohio App. 3d 422, 430 (Ohio Ct. App. 1997). As there are no allegations of fraud against

6

Fernandes, there is no reason to hale her into an Ohio court for actions she took in her capacity as Manager and Director of Smarty Ears.

### 2. Smarty Ears

Smarty Ears, on the other hand, is subject to Ohio jurisdiction.

Section (A)(1) permits Ohio's courts to exercise personal jurisdiction over claims "arising from," *inter alia*, an entity's "transacting any business in [Ohio]" either directly or through an agent. The Ohio Supreme Court has interpreted the phrase "transacting any business" to mean "to carry on business" and "to have dealings" and is "broader than the word 'contract.'" *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236 (1994).

Moreover, the Sixth Circuit has read the phrase as "extend[ing] to the federal constitutional limits of due process," and intending to reach "as far as the Due Process Clause will allow." *CompuServe*, 89 F.3d at 1262.

Given the broad reach of the phrase "transacting any business" in § (A)(1), I find Smarty Ears comes within Ohio's long-arm statute.[5] Not only did Smarty Ears derive revenue from sales activity in Ohio, *see Morel Acoustic, Ltd. v. Morel Acoustics USA, Inc.*, 2005 WL 2211306, *7 (S.D. Ohio), it also marketed its products in Ohio through its review, raffle and licensing arrangements with Rayburn – which Smarty Ears intended to "raise awareness of our symbol set" – and, to a lesser extent, through its review and feedback arrangement with Vogt. These efforts constituted "dealings" with Ohio for the purposes § (A)(1). *See Goldstein*, 70 Ohio St. 3d 232, 236 (1994).

---

[5] Whether Smarty Ears' actions come within §§ (A)(3), (A)(4) or (A)(6) is a closer call. Unlike a conventional tort case – involving, for example, allegations of fraud which obviously are tortious in nature – defendants dispute the tortious nature of their actions here. Symbolstix cites *Dayton Superior Corp. v. Jenn Techs., Inc.*, 2009 WL 4250034, *4 (S.D. Ohio), to argue the sale of *allegedly* infringing products is sufficient to establish jurisdiction. Because I find Smarty Ears actions come within § (A)(1) of the long-arm statute, I need not resolve that issue.

### B. Due Process

To prevail on the instant motion, Symbolstix also must demonstrate that the exercise of jurisdiction over Smarty Ears comports with due process.

For jurisdiction to be constitutional, "due process requires only that . . . [the party] have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Minimum contacts can give rise to either general personal jurisdiction or specific personal jurisdiction. *Irizarry v. E. Longitude Trading Co.*, 296 F. Supp. 2d 862, 864-65 (N.D. Ohio 2003).

### 1. General Jurisdiction

General jurisdiction exists "when a defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006).

A finding of general jurisdiction involves "a more stringent minimum contacts test." *Pierson v. St. Bonaventure Univ.*, 2006 WL 181988, *4 (S.D. Ohio) (quoting *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).

"Neither the United States Supreme Court nor this court has outlined a specific test to follow when analyzing whether a defendant's activities within a state are continuous and systematic. Instead, a court must look at the facts of each case to make such a determination." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000); *see Nationwide*, 91 F.3d at 794 ("continuous and systematic" analysis fact-based).

Among other factors, courts have considered: 1) whether the defendant solicits business in Ohio through a local office or agent; 2) whether the defendant sends agents into Ohio on a regular basis to solicit business; 3) the extent to which the defendant holds itself out as doing business in Ohio through advertisements, listings or bank accounts; and 4) the volume of business conducted in Ohio by the defendant. *Avery Dennison Corp. v. Alien Tech. Corp.*, 2008 WL 5130424, *7 (N.D. Ohio).

I find defendants have not engaged in substantial, continuous and systematic conduct in Ohio.

Smarty Ears does not solicit business in Ohio, nor does it have local offices, agents, or employees in the state. Smarty Ears employees do not travel into Ohio on a regular basis; in fact, there is no evidence Smarty Ears employees ever have traveled to Ohio. Smarty Ears does not systematically advertise directly to Ohioans, have an Ohio bank account, or otherwise hold itself out as doing business in the state. Moreover, the volume of Smarty Ears sales to Ohioans is not sufficient to establish general personal jurisdiction.

Based on these factors, I conclude Smarty Ears' relationship with Ohio is sporadic at best. *See Bird v. Parsons*, 289 F.3d 865, 873-74 (6th Cir. 2002) (defendant has not established a "continuous and systemic" presence in Ohio simply because nearly 5,000 Ohio residents have registered domain names when defendant does not have an office in Ohio, a license to conduct business, a bank account and does not direct its business operations from Ohio); *see also Nationwide*, 91 F.3d at 794 (no basis for general jurisdiction where defendant sent a letter to plaintiff assuming an interest in a business venture, entered into subsequent agreements, solicited additional business from plaintiff and profited from its contacts with Ohio).

9

I therefore cannot assert jurisdiction over Smarty Ears on a theory of general personal jurisdiction.

### 2. Specific Jurisdiction

Exercise of specific jurisdiction, by contrast, requires only that the conduct giving rise to the present litigation have a connection to Ohio. *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). To establish such a connection, the plaintiffs must show: 1) the defendant purposefully availed itself of benefits from acting or caused a consequence within Ohio; 2) the cause of action arose from the defendant's acts or such consequences; and 3) the connection between the defendant and Ohio was sufficiently substantial to make jurisdiction reasonable. *Id.*

By requiring a defendant purposefully to avail itself of the laws of the forum state, courts ensure that a defendant is not haled into a jurisdiction based on a random, fortuitous or attenuated contact. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). A defendant satisfies the purposeful availment requirement when its contacts create a "substantial connection" with the forum state such that defendant "should reasonably anticipate" being sued there. *CompuServe, Inc.*, 89 F.3d at 1263.

As I have previously held, entering into a contract with a resident of the forum state, without more, does not "automatically establish sufficient minimum contacts." *Highway Auto Sales Inc. v. Auto-Konig of Scottsdale, Inc.*, 943 F. Supp. 825, 830 (N.D. Ohio 1996). Another relevant factor is whether the nonresident party "reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989).

In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-476 (1985) (internal citations omitted), the Supreme Court explained:

> [W]here the defendant deliberately has engaged in significant activities within a state or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Thus, a finding of "purposeful availment" turns on whether Smarty Ears' connections with Ohio are either: 1) "substantial" or "significant" enough such that it should "reasonably" have anticipated being haled into an Ohio court; or 2) "continuing obligations" between it and Ohio residents. Smarty Ears' actions meet both criteria.

Construing the pleadings and affidavits in the light most favorable to Symbolstix, I find Smarty Ears' contacts with Rayburn and Vogt – and, through them, Ohio – were "significant" in that they were central to its product development and marketing strategies. Moreover, Smarty Ears forged "continuing," rather than occasional or incidental, commercial relationships with both Rayburn and Vogt. Those relationships lasted for years, and Smarty Ears created and maintained those relationships to benefit its business activities.

The fact Smarty Ears did not pay Rayburn and Vogt in cash for their "partnership" is inapposite. Rayburn and Vogt derived tangible benefits from their relationships with Smarty Ears: in Vogt's case, free apps; in Rayburn's case, free apps and increased notoriety and traffic on her website (on which, notably, she sells her own apps).

In light of the above, I find that the exercise of personal jurisdiction over Smarty Ears comports with due process.

11

## II. Venue

Defendants alternatively argue that venue in the Northern District of Ohio is improper, and that I should transfer venue either to the Northern District of Texas or the Southern District of Ohio under 28 U.S.C. § 1404(a).

When reviewing a motion to transfer under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir .1991) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). District courts possess broad discretion to grant or deny a transfer under § 1404(a). *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

In a copyright infringement case, I determine venue under 28 U.S.C. § 1400(a). *The Lubrizol Corp., v. Neville Chem. Co.*, 463 F. Supp. 33 (N.D. Ohio 1978). According to § 1400(a), "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found."

"A corporation is deemed to reside in any district 'in which it is subject to personal jurisdiction at the time the action is commenced.'" *J4 Promotions, Inc. v. Splash Dogs, LLC*, 2009 WL 385611, *26 (N.D. Ohio) (quoting *In re LimitNone, LLC*, 551 F.3d 572, 576 (7th Cir. 2008) (citing 28 U.S.C. § 1391(c))); *see Walker v. Concoby*, 79 F.Supp. 2d 827, 835 (N.D. Ohio 1999) (defendant "may be found" in any federal district in which it is subject to personal jurisdiction); *see also Palmer, Star's Edge, Inc. v. Eldon Brown*, 376 F.3d 1254, 1259 (11th Cir. 2004) (same); *Janmark, Inc., v. James T. Reidy and Dreamkeeper, Inc.*, 132 F.3d 1200, 1203

(7th Cir. 1997) (definition of "reside" found in § 1391(c) applicable to venue determination under § 1400(a)).

As explained above, Smarty Ears is subject to personal jurisdiction in the Northern District of Ohio. *See J4 Promotions, Inc.*, 2009 WL 385611, at *26. Moreover, Symbolstix, and many of its witnesses, reside in the Northern District of Ohio. *See Imperial Prods., Inc. v. Endura Prods., Inc.*, 109 F. Supp. 2d 809, 818 (S.D. Ohio 2000) ("The venue transfer provisions of Section 1404(a) [are] not meant to merely shift the inconvenience to the plaintiff.") (quoting *Bacik v. Peek*, 888 F. Supp. 1405, 1415 (N.D. Ohio 1993)). Accordingly, the Northern District of Ohio is an appropriate venue for this action. *See Morel Acoustic, Ltd.*, 2005 WL 2211306, at *9 ("[U]nless the [interests of justice tilt] strongly in favor of the defendant, the plaintiff's choice of forum should 'rarely' be disturbed.") (citing *Nicol v. Koscinski*, 188 F.2d 537, 538 (6th Cir. 1951)).

## Conclusion

It is, therefore

ORDERED THAT

1. Defendants' motion to dismiss for want of personal jurisdiction over Fernandes be, and the same hereby is, granted;

2. Defendants' motion to dismiss for want of personal jurisdiction over Smarty Ears be, and the same hereby is, denied; and

3. Defendants' motion to transfer venue be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge